# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STEPHANIE AND ALEXANDER ABBOTT, )
Individually, and as Personal Representatives )
of the Estate of M.P.A., ) C.A. No. N20C-05-175 FJJ
)
Plaintiffs, )
)
) TRIAL BY JURY DEMANDED
v. )
)
DEDICATED TO WOMEN OB/GYN, P.A., )
BAYHEALTH MEDICAL CENTER, INC., )
and CHRISTIANA CARE HEALTH )
SERVICES, INC., )
)
Defendants. )

Submitted: September 15, 2023
Decided: October 4, 2023

## **Order on the Parties Motions *in Limine***

*Granting in Part and Denying in Part Defendants' Motions in Limine*

*Bruce Hudson, Esq., and Josh Inkell, Esq.*, Hudson, Castle & Inkell, LLC, 2 Mill Road, Suite 202, Wilmington, Delaware, *Attorneys for Plaintiffs*

*Gregg Luther, Esq.,* Keenan Law Firm, 148 Nassau Street NW, Atlanta, Georgia (via email), *Attorney for Plaintiffs*

*Greg S. McKee, Esq., and Jonathan D. Landau, Esq.,* Wharton Levin, 300 Delaware Avenue, Suite 1110, Wilmington, Delaware, *Attorneys for Dedicated to Women Ob/Gyn, P.A.*

*Stephen J. Milewski, Esq., and Emily K. Silverstein, Esq.*, Balaguer, Milewski & Imbrogno, 2961 Centreville Road, Suite 300, Wilmington, Delaware, *Attorneys for Christiana Care Health Services, Inc.*

*Colleen D. Shields, Esq., and Alexandra Rogin, Esq.*, Eckert, Seamans, Cherin & Mellott, LLC, 222 Delaware Avenue, Suite 700, Wilmington, DE, *Attorneys for Bayhealth Medical Center, Inc.*

**Jones, J.**

1. **<u>Bayhealth Medical Center's Motion to Preclude Direct Claims of Negligence Against Bayhealth</u>[1]<u>.</u>**

Bayhealth has moved to preclude evidence of any direct claims of negligence against it, arguing that Plaintiffs have not produced any expert opinion supporting direct claims of negligence. Plaintiffs agree, as to counts (a), (b), (e) and (f) in paragraph 24 of the amended Complaint, that the Motion should be granted and therefore it is **GRANTED**.

That leaves allegations (c) Failing to Provide Adequate Staffing During Plaintiffs' Labor and Delivery; and (d) Failing to have an Adequate Backup Policy for Staffing when the Patient Load Exceeds the Minimum Staff/Patient Ratio Required for Safe Management of Maternity Patients. Plaintiffs point to the testimony of Nurse Shinn as proof that this claim is supported.

The Court has reviewed the record regarding Nurse Shinn's testimony on allegations (c) and (d). The Court's view is that there is no expert disclosure with respect to the backup policy. Additionally, Nurse Shinn, in her testimony, does not quarrel with either the one to one or the backup policies of the hospital. What opinions she expresses goes to whether the policies were followed. Therefore, there is no direct claim against Bayhealth as to the allegations in (c) and (d) of paragraph 24. Bayhealth's Motion as to paragraph (c) and (d) is **GRANTED**.

---

[1] Bayhealth Medical Center, Inc. is hereinafter referred to as "Bayhealth".

Additionally, since I've ruled out any direct claims against the hospital regarding Nurse Shinn's testimony, the issue of her qualifications to render this opinion is moot.

**2. Bayhealth Motion to Preclude the Unqualified Standard of Care and Causation Opinion of Pamela Kelly, ARN and Stephanie Felps, RRT.**

Pamela Kelly, ARN is a midwife. Bayhealth has moved to limit her opinion as to midwifes. Clearly, she can give an opinion as to midwifes. Kelly may not offer any opinion as to the nurses because: 1) she has disclosed no opinions as to the nurses; and 2) testified at deposition she was not offering any opinions on the nurses.

Bayhealth makes the same application to Plaintiffs' respiratory therapist, Ms. Felps. Felps' testimony will also be limited to that of a respiratory therapist.

Neither of these witnesses may offer any opinions regarding causation as they are not qualified to do so.

**3. Bayhealth's Motion to Preclude Criticisms of Care Without a Causal Connection to the Alleged Damages.**

Bayhealth has moved to preclude evidence of criticisms of the care that have not been tied to a causation opinion. The specific criticisms identified are: (1) the decision of the midwife to labor down; (2) turning off Pitocin earlier; and (3) criticisms of care prior to 7 a.m. and post-delivery care, which includes criticisms that the neonatal team was not present for delivery, (4) the failure of the nurses to obtain blood gas samples, and (5) the respiratory expert criticisms of documentation

2

in the NICU notes. If no causation testimony is provided as to the specific allegation, then as to that allegation the criticisms are excluded.

Plaintiffs agree that they are not alleging that the neonatal team was **negligent in not being present for the delivery**, so the Motion as to that claim is **GRANTED**. To be clear, this ruling is limited to the neonatal team not being present at the time of delivery.

As for the remaining claims, I do not have sufficient info on this record to rule. I will have to hear the testimony at trial to make a determination. But the standard is, as to any breach, there must be qualified testimony that the breach proximately caused some injury. The fact that two qualified experts give proximate cause opinions that are inconsistent with each other does not make the opinion of the one expert who says that there is proximate cause inadmissible. It will be admissible, and subject to cross examination.

4. **Bayhealth Motion to Preclude Opinion, Argument, or Evidence that Hospital Guidelines or Orders Set the Standard of Care.**

Bayhealth is concerned with the staff's failure to comply with the hospital's guidelines concerning Pitocin management, as well as notes within the Pitocin set. Bayhealth has moved to preclude evidence of the hospital's guidelines, as they are not the standard of care, and their admission will confuse or prejudice the jury. Specifically, Plaintiffs maintain that the hospital's nurses, midwifes, and obstetricians were negligent because they started Pitocin too early, failed to

discontinue Pitocin in the presence of adequate contractions, failed to discontinue Pitocin in the presence of tachysystole, and administered Pitocin above 20 mu/hr.

The guidelines apply only to nursing and indicate that nursing cannot go above 20 mu/hr without an order. Here, there was such an order. The standard of care is not dictated by internal hospital policies and procedures, but by the applicable standard of care as established by expert testimony. There is no question that the guidelines do not per se establish the standard of care. The question is whether it can be used as evidence of the standard of care.

Delaware case law has held that a hospital policy may be used as evidence of the standard of care. In *Sammons v. Doctors for Emergency Services ("DFES"),*[2] the Delaware Supreme Court refused to allow the hospital guidelines to be admitted for impeachment purposes because an appropriate witness had not been called, and the policy in question was written two years after the alleged negligence. In its decision, the Supreme Court made it clear, assuming a proper foundation has been laid, that a hospital policy may be material to a case, allowing for its use or introduction into evidence. Under *Sammons*, the policy is admissible if it is material. It is material to establishing the standard of care, whether people were aware of the policy, and the requirements of the policy. I will instruct the jury that is it not per se evidence of the

---

[2] 913 A.2d 519 (Del. 2021).

standard of care, but one fact that they may consider in evaluating what the standard of care is. The Motion is **DENIED**.

5. **Dedicated to Women OB/GYN, P.A.'s[3] Motion *in Limine* to Preclude at Trial Undisclosed Medical Literature.**

Although Dr. Schifrin did not bring the medical literature, he relied upon it at his deposition by identifying the materials. This is not a case where the requested material was not timely disclosed; it was disclosed at his deposition. His deposition was taken on December 21, 2022. Following that deposition, Defendant took no action to compel the production of this material.

Moreover, it is unclear to the Court whether Defendant got the materials on its own once the information was identified. But more importantly, Defendant did not take action. The discovery cutoff for this case was in July 2023. The materials were produced before that time. Defendant had the right to re-depose the expert before the end of the discovery period and choose not to do that. This Motion is **DENIED**. The evidence can be used in accordance with the rules of evidence. Whether the evidence can be admitted under the rules is a subject for trial.

6. **DTW has Filed Two Motions *in Limine* to Exclude Opinions of Plaintiffs' Nursing Expert Ms. Shinn.**

The first Motion focuses on Ms. Shinn's opinions, which DTW says are beyond the scope of her expertise. The second Motion is titled "Motion to Exclude

---

[3] Dedicated to Women OB/GYN, P.A. is hereinafter referred to as "DTW".

Undisclosed and Unqualified Testimony of Plaintiffs' Nursing Expert." First, Plaintiffs may not solicit any opinion of a breach of the standard of care that is not accomplice to a corresponding opinion by a qualified expert (not Shinn) that the breach was a proximate cause of the injury. Ms. Shinn has clearly testified that the nurses breached the standard of care by not questioning the continued use and/or dosage of Pitocin, and whether the Pitocin order should have been followed under the circumstances of this case.

I understand that this opinion might invade the judgment of other experts, but I am going to allow the testimony. Nurses are part of the labor and delivery team who work together. I find the decision in *Solway v. Kent Diagnostics Radiology Associates*[4] applicable to the instant case. In *Solway*, the Court noted that the relevant statute states that no person shall be competent to give expert medical testimony as to applicable standard of skill and care unless such person is familiar with degree of skill ordinarily employed in the field of medicine on which he or she will testify. Ms. Shinn's opinion is essentially that the nurses had a duty to advise others of stressors on the mother and baby which, according to this expert, they did not do. This is similar to the situation in *Solway,* and I will allow this testimony under that analysis.

---

[4] *Solway v Kent Diagnostics Radiology Associates*, 2014 WL 948318 (Del.Supr., February 26, 2014).

I do not find that this opinion is cumulative of Plaintiffs' other experts. Ms. Shinn is the only nursing expert. As the use of Pitocin is central to Plaintiffs' case, and this expert is talking about the duties and responsibilities of one of the subset nurses who were responsible for monitoring the Pitocin and advising others, I find that the testimony is proper. I am prepared to give a limiting instruction to the jury that Ms. Shinn's opinion is only to be considered as to the defendant nurses and not any other provider. With respect to causation testimony, I do think that is outside the bounds of the qualifications of this expert and I will not allow it.

At the oral argument on the motions, I indicated that Nurse Shinn may not use the term "unsafe," or any other word that suggests the same meaning, but that she could testify that the nurses should not have followed the order. I am persuaded by Ms. Shields comments at oral argument that I cannot say at this point that Nurse Shinn cannot use the term "unsafe." I need to see how the evidence plays out at trial before deciding how to rule on this issue. No reference should be made by anyone that Nurse Shinn thinks it was an unsafe order until we can address the issue at trial.

**7. DTW Motion to Exclude Opinion that Providers Exceeded the Maximum Permissible Dose of Pitocin.**

There appears to be a sharp disagreement between the experts about the maximum dose of Pitocin. But the dosage amount is not what is at issue. The issue is where Pitocin should have been discontinued. Since the maximum dose of Pitocin is not an issue that is central to the case I am going to exclude it because I think it

will do nothing but confuse the jury. I am going to **GRANT** this Motion and rule that any testimony about the maximum permissible dose of Pitocin is inadmissible.

8.  **Christiana Care Health Services, Inc's[5] Motion to Limit the Wrongful Death Beneficiaries.**

CCHS moves to limit the testimony of Mr. and Mrs. Abbott respectively on a number of issues. Generally, the matters outlined in the Defendant's Motion are admissible, as they go to the effect that MPA's death had on the parents. Hearsay evidence from third parties about what they said to plaintiffs will not be admissible through the plaintiffs themselves. Additionally, no specific economic dollars for plaintiffs' job losses or interruption in careers is admissible, as no expert proof has been presented on this point.

9.  **CCHS Motion *in Limine* to Preclude Evidence of MPA's Life Expectancy and Damages.**

CCHS moves to preclude any and all evidence of life expectancy and damages as to MPA, including earning capacity and pain and suffering. Whether MPA suffered conscious pain and suffering must be supported by evidence. Plaintiffs' response indicates that three witnesses will testify that, from their observations of MPA, she appeared to be in distress, which would support a claim for conscious pain and suffering. I am going to need to hear the testimony completely before I can rule

---

[5] Christiana Care Health Services, Inc. is hereinafter referred to as "CCHS".

8

on this. If such testimony is produced the conscious pain and suffering claim will go to the jury. I do not think that expert testimony is required on this point.

CCHS seeks to exclude any surviving claim against it on the grounds that the NICU team did not arrive until there was no further conscious pain and suffering on the part of the baby. There is a factual dispute about the length of time of the conscious pain and suffering claim. As such, a decision on this issue must await trial.

The claims related to life expectancy and earnings capacity requires expert testimony and no such testimony has been presented. Therefore, the life expectancy evidence cannot be presented to the jury.

**10. CCHS Motion *in Limine* to Preclude Photographs of MPA.**

CCHS believes that Plaintiffs will seek to introduce photos of MPA with her family members. The question here is whether the probative value of the photos is substantially outweighed by the danger of unfair prejudice. There must be a specific purpose for the photos, otherwise the probative value of the photos is outweighed by the unfair prejudice. In reaching this decision, I am guided by the decision in *Sammons v. DFES,*[6] where the photos were not admitted. Plaintiffs indicate that a number of the photos demonstrate the evidence of a hemorrhage. If this can be established, then these photos are admissible for this purpose. I will also allow the photos to refute the argument that the Plaintiff was morbidly obese

---

[6] 913 A.2d 519 (Del. 2021).

if the photos so demonstrate. Additional objections regarding the admission of the photographs (i.e., whether the timing of the photos is such that it would not demonstrate the hemorrhaging at the relevant time) will await trial.

11. **CCHS Motion to Limit the Testimony Pertaining to Subsections (A)-(D) And (H)-(I) of the Amended Complaint.**

The amended Complaint contains the following allegations directly against CCHS:

a. Failing to be in attendance bedside prior to delivery;

b. Failing to timely appear at bedside after being summoned by labor and delivery services;

c. Failing to be prepared for treatment and care of MPA after being to labor and delivery;

d. Failing to in tubate and otherwise properly resuscitate MPA;

e. Failing to recognize that intubation tube was in wrong location until revealed by Xray;

f . Failing to recognize clinical signs that baby was oxygen deprived for minutes due to tube in wrong place;

g. Failing to monitor MPA oxygenation following intubation;

h. Failing to order and obtain required tests; and

i. Failing to otherwise provide necessary and required care.

CCHS argues that none of the Plaintiffs' experts allege any negligence as to (a)-(d) and (h)-(i), and portions of (f) and (g). Plaintiffs agree that they will not seek to make a claim based on (a) and (b). Therefore the motion as to (a) and (b) is

10

**GRANTED**. As for the other claims, plaintiffs have responded with record evidence supporting these claims. At this point, based on the submissions, I must conclude that the Motion should be **DENIED**.

12. **CCHS Motion** *in Limine* **to Preclude any Testimony from the Family Meeting Including the Use of the Audio Recording.**

All parties agree that the recording should not be part of this trial, and I therefore order that it cannot be used for any reason.

13. **CCHS Motion** *in Limine* **to Preclude any Reference to Amy Parosky and John Stefano's Extremities Assessment of MPA.**

CCHS moves to exclude any reference to the assessment of Amy Parosky and John Stefano's extremities assessment, which were contained in their respective chart notes. According to CCHS, these assessments were inconsistent with everything else in the notes. Plaintiffs respond by indicating that the cited references are accurate and consistent with the recollection of Alexander Abbott and/or Shannon Price. At this point, it appears to the Court that the inconsistency goes to a material issue in the case, and I am not willing to exclude these records.

CCHS also seeks to keep plaintiffs from using the inaccurate or late made notes as a breach of the standard of care. I will not permit testimony that the note issues are a breach of the standard of care unless there is testimony that the allegations related to the notes was a proximate cause of the injuries.

**IT IS SO ORDERED.**

*/s/ Francis J. Jones, Jr.*
Francis J. Jones Jr., Judge